# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JACQUELINE A. CAMPBELL, )
)
    Plaintiff, )
)   **No. 04 C 5891**
    v. )
)   **Wayne R. Andersen,**
STERLING JEWELERS, INC., )   **District Judge.**
)
    Defendant. )

## MEMORANDUM, OPINION AND ORDER

This case is before the court on the motion of defendant Sterling Jewelers, Inc.

("Sterling") to dismiss this matter for lack of jurisdiction or, in the alternative, to stay

prosecution pending arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et*

*seq.* For the reasons stated below, we grant the motion to dismiss.

### BACKGROUND

For purposes of this motion, we assume the following facts as true. On June 20, 2002,

plaintiff Jacqueline A. Campbell ("Campbell") completed an employment application for

Sterling. The employment application, which Campbell signed, contains the following

arbitration clause:

> If employed by the company, you and the company agree to utilize the
> company's binding and mandatory alternative dispute resolution program
> to resolve certain workplace disputes. By signing this application, and in
> exchange for being hired by the company, you knowingly and voluntarily
> waive your applicable statutory rights to file a lawsuit against the company
> for a covered claim.

On September 3, 2002, Campbell began working for Sterling. On September 4, 2002, Sterling provided Campbell with several employment forms, including the RESOLVE Program Alternative Dispute Resolution Arbitration Agreement ("RESOLVE Agreement"), which she executed. The RESOLVE Agreement states that Campbell agrees "to utilize the Sterling RESOLVE Program to pursue any dispute, claim, or controversy against Sterling . . . regarding any alleged unlawful act regarding my employment or termination of my employment which could have otherwise been brought before an appropriate court." Further, the RESOLVE Agreement states that the employee signed the RESOLVE Agreement "knowingly, voluntarily, and free from duress or coercion." In addition, the employee is given seven days to revoke the agreement.

In April 2004, Campbell suffered an injury which resulted in her inability to perform her job duties. As a result of her injury, Campbell applied for a medical leave of absence. On May 28, 2004, Sterling granted Campbell's request for medical leave. Shortly thereafter, Sterling's workers' compensation insurance carrier notified Campbell that her claim did not qualify for benefits under the Illinois Workers' Compensation Act. On June 28, 2004, Campbell was discharged.

Campbell filed a two-count complaint, alleging the reason for her discharge was retaliation for her assertion of her right to benefits pursuant to the Illinois Workers' Compensation Act. (Pl. Compl. ¶ 29). Sterling has moved to dismiss the complaint or, in the alternative, to stay the proceedings pending arbitration.

## STANDARD OF REVIEW

A motion to dismiss a complaint does not test whether the plaintiff will prevail on the merits, but instead tests whether the plaintiff has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). In deciding a motion to dismiss, the court must assume all facts alleged in the complaint to be true, construe the allegations liberally and view the allegations in the light most favorable to the plaintiff. *Wilson v. Formigoni*, 42 F.3d 1060, 1062 (7th Cir. 1994). Dismissal is properly granted if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Cushing v. City of Chicago*, 3 F.3d 1156, 1159 (7th Cir. 1993).

## DISCUSSION

### I.    The Federal Arbitration Act Governs This Dispute

The FAA, 9 U.S.C. § 1 *et seq.*, governs the enforcement, interpretation and validity of arbitration clauses in contracts. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25 (1983); *Snyder v. Smith*, 736 F.2d 409, 417 (7th Cir. 1984). The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract." 9 U.S.C. § 2 (2003). The purpose of the FAA is to "reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). Accordingly, courts must give due regard to federal policy favoring arbitration and resolve ambiguities as to the scope of the arbitration clause in favor of arbitration. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995).

## A.    An Enforceable Agreement to Arbitrate Exists

Campbell argues that the arbitration clause is unenforceable because it is not supported by sufficient consideration. (*Br. for Pl.* at 5-6). In support of her argument, Campbell relies on *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126 (7th Cir. 1997). In *Gibson*, the defendant issued an employee manual including provisions for arbitration of all grievances and disputes relating to employment. 121 F.3d at 1128. Although the plaintiff signed the contract before she was given the manual, she did not sign the manual itself. *Id.* at 1129. The plaintiff claimed the arbitration agreement was not binding due to lack of consideration because the defendant did not mutually agree to arbitration. *Id.* at 1131. The court found that because the agreement was "worded entirely in terms of Gibson's obligation to submit her claims to arbitration" and contained "no gloss we can apply to the language of the understanding that would suggest that NHC was also required to forgo a judicial forum in favor of arbitration," the agreement lacked consideration. *Id.* at 1131.

This case is distinguishable from *Gibson* because Sterling, unlike the defendant in *Gibson*, promises to be bound by the RESOLVE arbitration process. First, Sterling's employment application clearly contains a provision in which Sterling agrees to submit to the "binding and mandatory dispute resolution program." (Ex. 1 to *Br. for Def.* at 10). Second, the RESOLVE Agreement itself states that "the decision or award of the Arbitrator shall be final and binding upon the parties." (Ex. 2 to *Br. for Def.* at 10). Finally, the third step in the RESOLVE Program states that "neither party may file a lawsuit instead of using the RESOLVE Program or accepting the Arbitrator's final decision." (Ex. 3 to *Br. for Def.* at 3).

4

In a similar case, the Seventh Circuit found sufficient consideration from the fact that both parties agreed to arbitrate with each other. *See Michalski v. Circuit City Stores, Inc.*, 177 F.3d 634, 637 (7th Cir. 1999). In *Michalski*, the court held that the signature of the employee to be bound by arbitration in the same agreement clearly indicated a mutual promise, binding on both parties, and thus was sufficient consideration. *Id.* Similarly, in this case, both Sterling and Campbell have agreed to submit employment disputes to arbitration. Accordingly, the RESOLVE Agreement is supported by sufficient consideration and, therefore, is enforceable.

## B.     The RESOLVE Agreement Does Not Violate Public Policy

Campbell next argues that an arbitration agreement removing a retaliatory discharge claim from judicial consideration without the employee's knowing and voluntary consent is against public policy. (*Br. for Pl.* at 6). Campbell contends that the RESOLVE Agreement, in this matter, was neither knowing nor voluntary because she applied for employment without knowing that the employment application contained an arbitration clause. (*Br. for Pl.* at 7). Campbell further claims that she did not understand what she was signing because her supervisor did not explain that the forms contained a mandatory arbitration agreement. *(Aff. for Pl.* at ¶ 4).

In support of her argument, Campbell relies on *Melena v. Anheuser-Busch, Inc.*, 352 Ill. App. 3d 699 (5th Dist. 2004). In *Melena*, the court declined to enforce an arbitration agreement signed by an employee over two years after she began her employment. *Id.* at 700. The court further noted that unlike a job applicant, the plaintiff did not have the benefit of having other job leads nor did she have the option of waiting for another job offer before resigning. *Id.* at 708-709. Thus, the court found that the plaintiff did not have any real "choices" regarding the arbitration clause. *Id.*

5

However, *Melena* is distinguishable from the present matter. Unlike the plaintiff in *Melena*, Campbell was made aware of the arbitration agreement *before* she began her employment with Sterling. On June 20, 2002, Campbell completed the pre-employment application containing the arbitration clause. (Ex. 1 to *Br. for Def.* at 1-2). On September 3, 2002, Campbell commenced her employment with Sterling. (*Br. for Pl.* at 1). The following day, Campbell executed a second document containing an arbitration agreement. (Ex. 2 to *Br. for Def.* at 2). Thus, Campbell signed the papers stating that she agreed to be bound to the terms of the arbitration agreement before she began her employment with Sterling.

Campbell's argument that she did not know the employment application contained an arbitration clause is not compelling. Campbell fails to articulate any basis under Illinois or Ohio contract law pursuant to which this court could invalidate the agreement to arbitrate. Moreover, under either Illinois or Ohio law, "a party has a general duty to read documents before he signs them, and his failure to do so will not render the document invalid." *Rudolph v. Santa Fe Park Enterprises, Inc.*, 122 Ill. App. 3d 372, 375-76 (1st Dist. 1984); *ABM Farms, Inc. v. Woods*, 81 Ohio St. 3d 498, 503 (1998).

The arbitration agreement's enforceability likewise is not precluded by Campbell's alleged failure to understand that by signing the employment application and the RESOLVE Agreement, she was agreeing to arbitrate disputes. Both the employment application and the RESOLVE Agreement that Campbell signed expressly provided that she agreed to arbitrate disputes regarding any alleged unlawful act regarding her employment or termination of employment which could have otherwise been brought before an appropriate court.

Moreover, Campbell, by signing the forms, explicitly acknowledged that she understood and agreed to abide by the terms of the RESOLVE Program, and that she was "knowingly" and "voluntarily" executing the forms. Under both Illinois and Ohio law, "a party may not avoid a contract fairly entered into because of a mistaken opinion of its legal effect." *Bruner v. Illinois Central R. Co.*, 219 Ill. App. 3d 177, 180 (5th Dist. 1991); *National City Bank of Marion v. Bader, et al.*, 1986 Ohio App. LEXIS 6047, at * 5 (March 12, 1986). Even though Campbell may not have completely understand the scope or nature of her arbitration agreement, the contention that her agreement was not knowing must nevertheless be rejected.

## CONCLUSION

For the foregoing reasons, Sterling Jeweler's, Inc.'s motion to dismiss [6-1] the complaint is granted. This is a final and appealable order.

It is so ordered.

Wayne R. Andersen
United States District Judge

Dated: *April 15, 2005*

7